IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LIJO PANGHAT, M.D.
*Plaintiff*

v.                                                    Civil Action No. ELH-19-994

BALTIMORE VETERANS AFFAIRS
MEDICAL CENTER, *et al.*
*Defendants.*

**MEMORANDUM OPINION**

Lijo Panghat, M.D., the self-represented plaintiff, filed suit against his former employers, the University of Maryland, Baltimore ("UM") and the "Baltimore Veterans Affairs Health Center" (the "VA"), alleging, *inter alia*, that he was unlawfully terminated from a Post-Doctoral fellowship position in UM's Department of Surgery. ECF 5 (the "Complaint").[1] The 44-page Complaint appears to lodge claims for denial of due process (ECF 5, ¶¶19-70, 108); breach of contract (*id.* ¶¶ 105-07); intentional infliction of emotional distress ("IIED") (*id.* ¶¶ 114, 129-33); wrongful discharge (*id.* ¶¶ 116, 122); and misrepresentation. *Id.* ¶¶ 134-42.[2] Plaintiff also appears to assert a retaliation claim under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"). ECF 5, ¶¶ 5, 115. Thirteen exhibits are appended to the Complaint. ECF 5-2 to ECF 5-14.

---

[1] Suit was filed in the Circuit Court for Baltimore City on January 23, 2019. ECF 1-3. The United States timely removed the case to this Court on April 2, 2019 (ECF 1), on behalf of the Department of Veterans Affairs, based on federal question jurisdiction. *See* 28 U.S.C. §§ 1441 and 1442. The Clerk will be instructed to correct the name of this defendant.

[2] Because plaintiff is proceeding without counsel, his filings have been "'liberally construed'" and are "'held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted).

UM has moved to dismiss the Complaint, pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6). ECF 16. The motion is supported by a memorandum of law (ECF 16-1) (collectively, the "UM Motion"), and eighteen exhibits. ECF 16-3 to ECF 16-20. The VA also moved to dismiss under Rules 12(b)(1) and 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56(a) (ECF 17), supported by a memorandum. ECF 17-1 (collectively, the "VA Motion"). Plaintiff opposes both motions. ECF 25; ECF 26. And, defendants have replied. ECF 27; ECF 36.

After the motions became ripe, plaintiff submitted a "Motion To Submit New Evidence To Further Support The Case of Dr. Panghat" (ECF 37) ("Motion to Supplement"), along with an affidavit and two exhibits. ECF 37-1 to ECF 37-3. UM opposes the Motion to Supplement (ECF 38), and plaintiff has replied. ECF 39; ECF 39-1 to ECF 39-3. In addition, plaintiff filed a motion for entry of default against the VA. ECF 40 ("Motion for Entry of Default"). The VA opposes the Motion for Entry of Default. ECF 41.

No hearing is necessary to resolve the motions. *See* Local Rule 105.6. For the reasons that follow, I shall grant the UM Motion (ECF 16) and VA Motion (ECF 17), and I shall deny the Motion to Supplement (ECF 37) as well as the Motion for Entry of Default (ECF 40).

## I.    Background[3]

### A.  Factual Background

Dr. Panghat is an Indian national working in the United States on a J-1 visa. ECF 5, ¶ 1. In September 2015, he received an offer from UM to serve as a Post-Doctoral Fellow at UM's

---

[3] As discussed, *infra*, in the posture of this case, I must assume the truth of the facts alleged by plaintiff. However, I have included facts drawn from those defense exhibits that are subject to consideration at this juncture.

School of Medicine, in the Department of Surgery, Division of Vascular Surgery. *Id.* His offer was memorialized in a letter dated September 10, 2015, signed by Stephen T. Barlett, M.D., the Chairman of UM's Surgery Department. ECF 5-4 ("Offer Letter").[4] Plaintiff's faculty mentor was Dr. Brajesh Lal, Professor of Surgery. *Id.*

According to the terms of the Offer Letter, the position was "expected to be for one year," with the possibility of "renewals up to a maximum of 5 years in the School." *Id.* Further, it provided that Panghat's appointment as a "Visiting Post-Doctoral Fellow will end when you resign or after notice of termination per the UMSOM [University of Maryland School of Medicine] Scholar Fellow Policy, whichever is sooner." *Id.* Under the terms of the UMSOM Scholar Fellow Policy, "[a] Scholar Fellow appointment may be terminated by the Unit Head (Dean, Chair, Director), with or without cause, before expiration for disciplinary or non-disciplinary reasons[.]" ECF 5-6 ("Fellow Policy"). The Fellow Policy further provided that fellows "are to be provided with a minimum of 60 calendar days' written notice when an appointment is to be terminated." *Id.* However, it also explained that "[e]xceptions to providing the requisite 60 day notice may be sought through the [School of Medicine] Dean's Office in extraordinary circumstances[.]" *Id.*

As part of his fellowship, Dr. Panghat also worked part-time at the VA's Health Center in Baltimore. ECF 5, ¶¶ 2, 12. According to plaintiff, he was a "WOC (Without Compensation) VA employee." *Id.* ¶ 3.

Plaintiff alleges that while at the VA, he was sexually harassed by a senior VA surgeon, Dr. Preeti Rebecca John, with whom he worked at the direction of his UM supervisor, Dr. Lal.

---

[4] Plaintiff alleges that UM asked him to sign three different employment contracts, which he has attached as exhibits. ECF 5, ¶¶ 10-11; ECF 5-1; ECF 5-2; ECF 5-3. Each appears to be a letter from Dr. Stephen Bartlett. One, dated September 24, 2015, is not on business letterhead. ECF 5-2. The other two letters are printed on UM letterhead and are dated September 16, 2015 (ECF 5-3), and September 10, 2015 (ECF 5-4). The text of all three letters appears to be identical.

ECF 5, ¶¶ 3, 15. Plaintiff "complained to his supervisors" that he was being sexually harassed by Dr. John. *Id.* ¶ 3. But, "instead of resolving this problem, his supervisors suddenly became very hostile against him." *Id.*; *see id.* ¶ 16. In addition, the harassment from Dr. John allegedly "increased manifold." *Id.* ¶ 16.

On January 19, 2016, plaintiff met with Dr. Lal and Dr. Rajabrata Sarkar, another senior physician in the Surgery Department. *Id.* ¶ 17. During the meeting, Dr. Sakar allegedly "made an absolutely wild false allegation against [plaintiff] in the presence of Dr. Lal[.]" *Id.* Specifically, Dr. Sakar accused plaintiff of "stalking another employee[.]" *Id.* Dr. Lal then told plaintiff that he was "terminated forthwith on the grounds of this so-called sexual harassment of a colleague." *Id.* ¶18. When plaintiff tried to respond, "Dr. Lal refused to give him an opportunity to speak[.]" *Id.* Rather, UM "summarily" terminated him. *Id.*

Plaintiff received a letter from Dr. Barlett, dated February 4, 2016. ECF 5-11 ("Termination Letter"). It said, in part, *id.*:

> This letter is to inform you that in accordance with the policies applicable to the employment of Post-Doctoral Fellows, your position with the University of Maryland, Baltimore is being terminated for cause. Specifically, as part of a sexual harassment complaint and investigation against you, you were directed to cease all interactions with the Complainant. Thereafter, you continued to make contact with her, and you continued to engage in conduct similar to which you had been warned to cease. Your failure to follow the direct order to refrain from contacting the Complainant constitutes serious misconduct and could be interpreted as an attempt to harass or intimidate her in violation of university policy.

Further, the Termination Letter advised that, "[d]ue to the extraordinary circumstances of the situation, grounds exist for immediate termination." *Id.* However, Dr. Bartlett stated: "Notwithstanding this fact, UMB is electing to give you 60 days' notice from the date you spoke with Dr. Rajabrata Sarkar such that your discharge will be effective March 18, 2016." *Id.* The Termination Letter warned plaintiff that UM would no longer sponsor his J-1 visa, meaning he

needed to either depart the United States no later than thirty days from March 18, 2016, or adjust his visa status. *Id.*

Following plaintiff's termination, he lodged a complaint with UM's Title IX Director. ECF 5, ¶ 5; *see id.* ¶ 23. Plaintiff alleges that UM responded by "deliberately blocking his transfer to Johns Hopkins Medical Institutions (JHMI) to take up a new job of a post-doctoral fellow[.]" *Id.* ¶ 5. Further, he claims that UM "knowingly and viciously acted in a manner due to which the status of [plaintiff's] valid Visa was irrevocably jeopardized." *Id.*; *see id.* ¶ 88(b). According to plaintiff, he has not worked as a physician since January 2016. *Id.* ¶ 6.

### B. Procedural History

On June 12, 2017, Dr. Panghat, without counsel, filed a defamation lawsuit against UM in the Circuit Court for Baltimore City. *See Panghat v. Univ. of Md., Balt.*, 24-C-17-003267 ("Defamation Action"); *see also* ECF 16-3, ¶ 8 ("Defamation Complaint"). Plaintiff alleged that the Termination Letter was defamatory and should not have been sent to the University's Office of International Services. ECF 16-3, ¶ 14. The Defamation Complaint contained a lengthy recitation of factual allegations, as well as numerous exhibits. And, it alleged that UM "had committed a large number of other serious offenses" against him, including "wrongful termination, breach of contract and retaliation." *Id.* ¶ 6.

In the Defamation Complaint, plaintiff acknowledged that he was confining his lawsuit to defamation but planned to file future lawsuits. He said: "[I]n this present Complaint the Plaintiff is not including these other offenses, as these will be taken up separately at a later date. At present Plaintiff is taking up only the case of defamation against [the University] because there is a statuette [sic] of limitations for this of one year that is fast approaching." *Id.* ¶ 7.

UM moved to dismiss the Defamation Action, asserting, *inter alia*, that it was immune from suit due to plaintiff's failure to file a notice of his claim with the State Treasurer's Office, as required by the Maryland Tort Claims Act ("MTCA"), Md. Code (2014 Repl. Vol.), §§ 12-101 *et. seq.*, of the State Government Article ("S.G."). ECF 16-11 ("UM Motion to Dismiss Defamation Complaint"). The circuit court granted UM's motion on the ground that plaintiff had failed to submit a timely notice of claim to the State Treasurer, as required by the MTCA, nor had he shown good cause for the failure to do so. ECF 16-14 ("Circuit Court Order").[5] Plaintiff appealed to the Maryland Court of Special Appeals, which affirmed the circuit court's order in an unpublished per curiam opinion on March 5, 2019. ECF 16-17 ("Court of Special Appeals Opinion").

Dr. Panghat initiated the instant action in the Circuit Court for Baltimore City on January 18, 2019. ECF 1. On April 2, 2019, the United States timely removed the case to this Court on behalf of the VA. *Id.*; *see also* ECF 10. Thereafter, UM filed a motion to dismiss (ECF 16), and the VA moved to dismiss or, in the alternative, for summary judgment. ECF 17. Plaintiff opposes the motions. ECF 25; ECF 26. And, defendants replied. ECF 27; ECF 36.

On November 7, 2019, plaintiff filed the Motion to Supplement. ECF 37. There, plaintiff avers that he has obtained "crucial new evidence that is vital and extremely pertinent to this Case[.]" *Id.* at 1. He alleges that the Maryland Commission on Civil Rights ("MCCR"), with whom he lodged a complaint, "was mislead [sic] by Defendant UM." *Id.* at 2. And he asserts that the MMCR's Written Finding (ECF 16-20) and the right-to-sue letter (ECF 16-19) issued to him by the Equal Employment Opportunity Commission ("EEOC") are "erroneous." *Id.* UM filed an opposition to the Motion to Supplement ECF 38), and plaintiff replied. ECF 39.

---

[5] The Circuit Court Order cited S.G. § 12-206, a non-existent provision. *See* ECF 16-14. However, as the Maryland Court of Special Appeals acknowledged, this was merely a clerical error; the circuit court quoted language directly from S.G. § 12-106. *See* ECF 16-17 at 6.

Plaintiff filed a "Request to Clerk of Count to Enter Order of Default" on December 13, 2019. ECF 40. In the motion, plaintiff seeks an entry of default against the VA on the ground that the VA "failed to plead or otherwise present its defense against" plaintiff's opposition. ECF 40. The VA responded on December 20, 2019. ECF 41.

## II. Standard of Review

### A. Rule 12(b)(1)

Under Rule 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction. *See Demetres v. East West Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *see also The Piney Run Preservation Ass'n v. Cty. Comm'rs of Carroll Cty.*, 523 F.3d 453, 459 (4th Cir. 2008); *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).

A challenge to subject matter jurisdiction under Rule 12(b)(1) may proceed "in one of two ways": either a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "'that the jurisdictional allegations of the complaint [are] not true.'" *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted); *accord Durden v. United States*, 736 F.3d 296, 300 (4th Cir. 2013). A factual challenge can assert that facts outside the four corners of the complaint preclude the exercise of subject matter jurisdiction. *Id.*

In a facial challenge, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns*, 585 F.3d at 192. On the other hand, in a factual challenge, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Id.* In that circumstance, the court "may regard the pleadings as mere evidence on the issue and may consider evidence

outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *see also In re KBR, Inc., Burn Pit Litig.*, 744 F.3d 326, 333 (4th Cir. 2014); *Evans*, 166 F.3d at 647.

Here, UM asserts that Eleventh Amendment immunity forecloses plaintiff's breach of contract and tort claims. ECF 16-1 at 14-17. Likewise, the VA maintains that plaintiff's tort and due process claims are barred by sovereign immunity because plaintiff failed to exhaust his administrative remedies. ECF 17-1 at 9-10, 14-15. The Fourth Circuit recently reiterated that the defense of sovereign immunity is a jurisdictional bar, stating that "'sovereign immunity deprives federal courts of jurisdiction to hear claims, and a court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject-matter jurisdiction.'" *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 649 (4th Cir. 2018) (quoting *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 207 (5th Cir. 2009)). Thus, defendants raise a facial challenge to the Court's subject matter jurisdiction, and I shall assume the truth of plaintiff's allegations.

### B. Rule 12(b)(6)

As noted, the VA Motion is styled as a "Motion to Dismiss Or, In the Alternative, For Summary Judgment." ECF 17-1. A motion styled in the alternative implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dep't, Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger*, 510 F.3d at 450. However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is

pertinent to the motion." Fed. R. Civ. P. 12(d). But, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).[6]

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366 (3d ed. 2018). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.*

In general, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours and Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011). As the Fourth Circuit has said, when a district judge rules on a summary judgment motion prior to discovery, it is akin to "for[cing] the non-moving party into a fencing match without a sword or mask." *McCray v. Md. Dep't of Transp., Md. Transit*

---

[6] In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials.").

*Admin.*, 741 F.3d 480, 483 (4th Cir. 2014); *accord Putney v. Likin*, 656 F. App'x 632, 639 (4th Cir. 2016) (per curiam).

However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

To justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be "essential" to the opposition. Fed. R. Civ. P. 56(d). A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports*, 914 F.3d 866, 874 (4th Cir. 2019); *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014); *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x 274 (4th Cir. 2008) (per curiam), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party who fails to file a Rule 56(d) affidavit does so at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity

for discovery was inadequate.'" *Harrods*, 302 F.3d at 244 (citations omitted). But, the non-moving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. "This is especially true where, as here, the non-moving party is proceeding pro se." *Putney v. Likin*, 656 F. App'x 632, 638 (4th Cir. 2016).

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted).

Dr. Panghat, who is without counsel, has not filed an Affidavit under Rule 56(d). And, he has submitted numerous exhibits in opposing defendants' motions. *See* ECF 25-1 to ECF 25-4; ECF 26-1 to ECF 25-5. However, plaintiff has not yet had an opportunity to engage in discovery. And, plaintiff vigorously argues that the record is not sufficiently developed. ECF 25 at 23-24; ECF 26 at 29-30. Indeed, after briefing concluded on the motions to dismiss, plaintiff filed a motion seeking leave of court to submit additional evidence in furtherance of his case. ECF 37. Accordingly, I shall construe the VA Motion as a motion to dismiss.

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th

Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *see also Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, *Miss.*, 574 U.S. 10, 10 (2014) (per curiam). But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation

of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief. *Iqbal*, 556 U.S. at 678. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co.*, 637 F.3d at 440 (citations omitted); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Glassman v. Arlington Cty.*, 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses'" through a Rule 12(b)(6) motion. *Edwards*, 178 F.3d at 243 (quoting *Republican Party v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992)). However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v.*

*Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'" *Goodman,* 494 F.3d at 464 (quoting *Forst,* 4 F.3d at 250) (emphasis added in *Goodman*).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). Ordinarily, the court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein . . . ." *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013); *see Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007).

But, under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." *Goines*, 822 F.3d at 166 (citation omitted); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167 (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998)). Of import here, "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Goines*, 822 F.3d at 167. Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

A court may also "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see also Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, __ U.S. __, 138 S. Ct. 558 (2017); *Oberg*, 745 F.3d at 136; *Kensington Volunteer Fire Dep't. v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original). *See also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

In addition, "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb*, 791 F.3d at 508; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308,

322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.,* 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011); *Philips v. Pitt Cty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). However, under Fed. R. Evid. 201, a court may take judicial notice of adjudicative facts only if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

As noted, the Complaint is supported by thirteen exhibits. ECF 5-2 to ECF 5-14. The Offer Letter (ECF 5-4), Fellow Policy (ECF 5-6), and Termination Letter (ECF 5-11) are referenced in the Complaint, and defendants do not challenge their authenticity. And, the EEOC's right-to-sue letter (ECF 16-19) is integral to the Complaint. *See Evans v. Md. State Hwy. Admin*., JKB-18-935, 2018 WL 4733159, at *1 n.1 (D. Md. Oct. 2, 2018) ("Plaintiff's EEOC documents are integral to her complaint and may be considered by this Court because they are a necessary precondition of her right to sue, are explicitly referenced in her complaint, and their authenticity is not disputed."). Accordingly, I may consider these documents at this stage, without converting the UM Motion to one for summary judgment. In addition, I shall take judicial notice of the public records filed in the Defamation Action. These filings include the Defamation Complaint (ECF 16-3), the UM Motion to Dismiss Defamation Complaint (ECF 16-11), the Circuit Court Order (ECF 16-14), and the Court of Special Appeals Opinion (ECF 16-17).

In considering the motions, I am mindful that plaintiff is self-represented. Thus, his pleadings are "liberally construed" and "held to less stringent standards than [those filed] by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "However, liberal construction does not absolve Plaintiff from pleading a plausible claim." *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 314 (D. Md. 2014), *aff'd*, 584 F. App'x 135 (4th Cir. 2014); *see also Coulibaly v. J.P.*

*Morgan Chase Bank, N.A.*, DKC-10-3517, 2011 WL 3476994, at *6 (D. Md. Aug. 8, 2011) ("[E]ven when pro se litigants are involved, the court cannot ignore a clear failure to allege facts that support a viable claim."), *aff'd*, 526 F. App'x 255 (4th Cir. 2013).

Moreover, a federal court may not act as an advocate for a self-represented litigant. *See Brock v. Carroll*, 107 F.3d 241, 242-43 (4th Cir. 1996); *Weller v. Dep't of Social Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). Therefore, the court cannot "conjure up questions never squarely presented," or fashion claims for a plaintiff because he or she is self-represented. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986); *see also M.D. v. Sch. Bd. of City of Richmond*, 560 F. App'x 199, 203 n.4 (4th Cir. 2014) (rejecting self-represented plaintiff's argument that district court erred in failing to consider an Equal Protection claim, because plaintiff failed to allege it in the complaint).

### III.    The UM Motion

### A.  Sovereign Immunity

UM argues that plaintiff's breach of contract claim and his tort claims are barred by sovereign immunity. ECF 16-1 at 14-17. I address each contention in turn.

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any Foreign State." U.S. Const. amend XI. The Eleventh Amendment did not create sovereign immunity. Rather, it preserved the sovereign immunity that the states enjoyed prior to the formation of the Union. *See Alden v. Maine*, 527 U.S. 706, 724 (1999); *see also Sossamon v. Texas*, 563 U.S. 277, 284 (2011). The preeminent purpose of state sovereign immunity is "to accord states the dignity that is

consistent with their status as sovereign entities[.]" *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 760 (2002).

States enjoy immunity from suits brought in federal court by their own citizens, even though the text of the Eleventh Amendment does not explicitly address such a scenario. *See Hans v. Louisiana*, 134 U.S. 1, 3 (1890); *see also Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting states may not be sued by private individuals in federal court."). In other words, under the Eleventh Amendment, a private individual is barred from bringing a suit against a state in federal court to recover damages, unless an exception to sovereign immunity applies. *See Coleman v. Ct. of Appeals of Md.*, 556 U.S. 30, 35 (2012) ("A foundational premise of the federal system is that States, as sovereigns, are immune from suits for damages, save as they elect to waive that defense."); *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247 (2011); *see also Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54-55 (1996) ("For over a century we have reaffirmed that federal jurisdiction over suits against unconsenting States was not contemplated by the Constitution when establishing the judicial power of the United States." (internal quotation marks and citation omitted)).

Of import here, sovereign immunity also bars suit against an instrumentality of a state, sometimes referred to as an "arm of the state," absent waiver or a valid congressional abrogation of sovereign immunity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."); *see also Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997); M*cCray v. Md. Dep't of Transp., Md. Transit Admin.*, 741 F.3d 480, 483 (4th Cir. 2014); *Bland v. Roberts*, 730 F.3d 368,

389 (4th Cir. 2013); *Constantine v. Rectors and Visitors of George Mason Univ.*, 411 F.3d 474, 479 (4th Cir. 2005).

UM is a constituent institution of the University System of Maryland, and therefore it is an instrumentality of the State for purposes of sovereign immunity. *See* Md. Code (2018 Repl. Vol.), § 12-102(a)(1)-(3) of the Education Article ("Educ.") (providing that the University System of Maryland is "an instrumentality of the State" and "an independent unit of State government"); *id.* § 12-101(b)(6)(i)(1) (listing the University of Maryland, Baltimore Campus as one of the "constituent institutions" of the University System of Maryland); *see also Md. Stadium Auth. v. Ellerbe Becket Inc.*, 407 F.3d 255, 265 (4th Cir. 2005) (recognizing UM as an "alter ego of Maryland"); *Palotai v. Univ. of Md. Coll. Park*, 959 F. Supp. 714, 716 (D. Md. 1997) ("The University of Maryland is . . . 'an arm of the State partaking of the State's Eleventh Amendment immunity.'" (citation omitted)). Therefore, suit against UM is tantamount to a suit against the State for the purposes of Eleventh Amendment immunity.

There are, however, three exceptions to the Eleventh Amendment's prohibition of a suit against a state or an arm of the state. *In Lee-Thomas v. Prince George's County Public Schools*, 666 F.3d 244 (4th Cir. 2012), the Court said, *id.* at 249 (internal quotations omitted):

> First, Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority. *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) . . . . Second, the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law. Frew ex rel. *Frew v. Hawkins*, 540 U.S. 431, 437 (2004) . . . . Third, a State remains free to waive its Eleventh Amendment immunity from suit in a federal court. *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 618 (2002).

Plaintiff's breach of contract claim and tort claims implicate the third exception.

The Maryland General Assembly has opted to waive sovereign immunity for breach of contract claims lodged against the State. Specifically, S.G. § 12-201(a) provides: "Except as

otherwise expressly provided by a law of the State, the State, its officers, and its units may not raise the defense of sovereign immunity in a contract action, in a court of the State, based on a written contract that an official or employee executed for the State or 1 of its units while the official or employee was acting within the scope of the authority of the official or employee." *See, e.g.*, *ARA Health Servs., Inc. v. Dep't of Pub. Safety and Corr. Servs.*, 344 Md. 85, 685 A.2d 435 (1996) (per curiam). This waiver is also subject to a time limitation: "A claim under [§ 12-201] is barred unless the claimant files suit within 1 year after the later of: (1) the date on which the claim arose; or (2) the completion of the contract that gives rise to the claim. *Id.* § 12-202. This limitation period "functions as a 'condition precedent' for bringing a contract claim against Maryland and/or its officers." *Smith v. Maryland*, MJG-17-3051, 2018 WL 1621048, at * 5 (D. Md. Apr. 4, 2018) (quoting *Magnetti v. Univ. of Maryland*, 402 Md. 548, 564, 937 A.2d 219, 231 (2007)).

The Complaint alleges that UM breached its contract with plaintiff by requiring plaintiff to work more hours than were outlined in his Offer Letter, by failing to make timely salary payments, and by terminating plaintiff without proper notice or procedures. ECF 5, ¶¶ 71-86, 105-07. At the latest, the alleged breach occurred when plaintiff was terminated on March 18, 2016. ECF 5-11. However, plaintiff did not file this action until January 18, 2019. *See* ECF 1. Accordingly, plaintiff's breach of contract claim was filed outside the one-year period for the limited waiver of immunity and is therefore barred.

With respect to tort claims, the MTCA offers "a limited waiver of sovereign immunity" and is "the sole means by which the State of Maryland may be sued in tort." *Swagler v. Harford Cty.*, RDB-08-2289, 2009 WL 1575326, at *4 (D. Md. June 2, 2009), *aff'd in part, rev'd in part on other grounds sub nom. Swagler v. Neighoff*, 398 F. App'x 872 (4th Cir. 2010) (per curiam); *see Condon v. Md.-Univ. of Md.*, 332 Md. 481, 492, 632 A.2d 753, 758 (1993); *Mitchell v. Hous.*

*Auth. of Balt. City*, 200 Md. App. 176, 201-202, 26 A.3d 1012, 1027-28 (2011). In tort cases, "the immunity of the State and of its units is waived as to a tort action, in a court of the State," provided that the State's liability may not exceed $200,000. S.G. § 12-104. However, a plaintiff may sue under the MTCA only if he provides notice of his claim to the State Treasurer within one year after the injury to the person or property that is the basis for the suit. *Id.* § 12-106(b).

Plaintiff's tort claims are untimely. Again, at the very latest, plaintiff was terminated on March 18, 2016. ECF 5-11. Yet, plaintiff did not submit a notice of claim to the State Treasurer until November 2017. *See* ECF 16-18 (Notice to Treasurer dated November 22, 2017); *see also* ECF 16-7 at 4 (recounting that plaintiff asserted he filed a notice with the Treasurer on November 27, 2017). Therefore, plaintiff was more than a year tardy in filing his notice. Indeed, plaintiff's defamation claim was dismissed in State court for the same reason. *See* ECF 16-14; ECF 16-17.

Accordingly, because plaintiff's breach of contract claim and his tort claims are barred by Eleventh Amendment immunity, they are subject to dismissal as against UM.

## B. Res Judicata

Alternatively, UM moves to dismiss the Complaint based on the doctrine of res judicata. ECF 16-1 at 10-14. According to UM, plaintiff's suit is foreclosed by res judicata because UM was a party in the State Defamation Action, both lawsuits rest on the same set of factual allegations, and that lawsuit resulted in a final judgment on the merits. The party who asserts res judicata has the burden of establishing its application. *Bennett v. Garner*, 913 F.3d 436, 440 (4th Cir. 2019).[7]

---

[7] As noted, courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses'" through a Rule 12(b)(6) motion. *Edwards*, 178 F.3d at 243 (quoting *Martin,* 980 F.2d at 952). However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman*, 494 F.3d at 464; *accord Pressley,* 553 F.3d at 336.

Under the doctrine of res judicata, or claim preclusion, "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Montana v. United States*, 440 U.S. 147, 153 (1979); *see SAS Inst., Inc. v. World Programming Ltd.*, 847 F.3d 370, 378 (4th Cir. 2017); *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 161 (4th Cir. 2008). At bottom, res judicata is a "'practical' doctrine" that asks "whether the party has previously had a fair shot with respect to the claims raised in the present action." *SAS Inst.*, 847 F.3d at 378 (citation omitted). The doctrine has manifest benefits; it protects litigants from vexatious litigation, conserves judicial resources, promotes efficiency, and minimizes the risk of inconsistent judgments. *See Montana*, 440 U.S. at 153-54; *SAS Inst.*, 847 F.3d 3at 378; *Laurel Sand & Gravel*, 519 F.3d at 161-62.

When considering the preclusive effect of an earlier state court judgment on a new claim, courts "apply the 'preclusion law of the State in which judgment was rendered.'" *Id.* at 440 (quoting *In re Genesys Data Techs., Inc.*, 204 F.3d 124, 127 (4th Cir. 2000)); *see Exxon Mobil Corp. v. Saudi Basic Indus. Corp*., 544 U.S. 280, 293 (2005); *Laurel Sand & Gravel,* 519 F.3d at 162. Under Maryland law, res judicata bars claims where "'(1) the parties in the present litigation are the same or in privity with the parties to the earlier litigation; (2) the claim presented in the current action is identical to that determined or that which could have been raised and determined in the prior litigation; and (3) there was a final judgment on the merits in the prior litigation.'" *Cochran v. Griffith Energy Servs., Inc.*, 426 Md. 134, 140, 43 A.3d 999, 1002 (2012) (citation omitted); *accord Powell v. Breslin*, 430 Md. 52, 63-64, 59 A.3d 531, 538 (2013). Notably, "[t]he elements of res judicata under federal law are analogous to those under Maryland law[.]" *Anne Arundel Cty. Bd. of Educ. v. Norville*, 390 Md. 93, 108, 887 A.2d 1029, 1037 (2005); *see also SAS*

*Inst.*, 847 F.3d at 378 (describing federal res judicata test); *Providence Hall Assoc. Ltd. P'shp v. Wells Fargo Bank, N.A.*, 816 F.3d 273, 276 (4th Cir. 2016); *Clodfelter v. Republic of Sudan,* 720 F.3d 199, 210 (4th Cir. 2013).

Applied here, res judicata bars plaintiff from relitigating his termination from UM in this Court. Regarding the first element, plaintiff and UM were both parties to the State Defamation Action. *See* ECF 16-3. Thus, the parties are the same. In his Opposition, plaintiff contends that claim preclusion is inapposite here because the VA was not a party to his State action. ECF 25 at 12. That is true, but irrelevant. A plaintiff cannot skirt the doctrine of claim preclusion simply by adding additional defendants to his complaint. *See Abunaw v. Campos*, PWG-16-3705, 2018 WL 453523, at *3 (D. Md. Jan. 17, 2018); *Csabai v. Martek Biosciences Corp.*, No. CCB-11-316, 2011 WL 1831777, at *3 (D. Md. May 12, 2011).

The second element is likewise satisfied. To determine whether a cause of action is "identical" for the purpose of res judicata, the Fourth Circuit and Maryland both apply a "transactional" approach. *See Schwartz v. J.J.F. Mgmt. Serv.*, *Inc.*, 922 F.3d 558, 566 (4th Cir. 2019); *SAS Inst.*, 874 F.3d at 378-79; *Clodfellter*, 720 F.3d at 210; *Norville*, 390 Md. at 108-09, 887 A.2d at 1037; *Kent Cty Bd. of Educ. v. Bilbrough*, 309 Md. 487, 499-500, 525 A.2d 232, 238 (1987). The transaction test provides that a claim is identical if it "'arises out of the same transaction or series of transactions as the claim resolved by the prior judgment'" and "'the claims could have been brought in the earlier action.'" *SAS Inst.*, 874 F.3d at 378-79 (quoting *Laurel Sand & Gravel*, 519 F.3d at 162); *see Norville*, 390 Md. at 108-09, 887 A.2d at 1037; *see* RESTATEMENT (SECOND) OF JUDGMENTS § 24(2) cmt. c (1982). Put simply, the suits are identical where the claims asserted in both actions are based upon the same set of facts such that, ordinarily,

one would expect them to be litigated simultaneously.  *See Norville*, 390 Md. at 108-09, 887 A.2d at 1037.

The claims lodged in the Complaint are identical to those that could have been raised in the Defamation Action.  The facts underlying the suits are the same.  Plaintiff's Defamation Complaint alleges that he was terminated from his fellowship position at UM without sufficient process.  *See generally* ECF 16-3. And, he asserts that UM committed the particular wrongs that he now seeks to remedy in this suit.  *Compare id.* ¶ 6 (alleging that UM "committed a large number of other serious offenses" against him, including "wrongful termination, breach of contract and retaliation"), *with* ECF 5 (asserting these claims).

Indeed, plaintiff expressly acknowledged in the Defamation Complaint that he was saving the very claims he now asserts for strategic reasons.  ECF 16-3, ¶ 7 ("[I]n this present Complaint the Plaintiff is not including these other offenses, as these will be taken up separately at a later date. At present Plaintiff is taking up only the case of defamation against [the University] because there is a statuette [sic] of limitations for this of one year that is fast approaching.").  Therefore, this case is on all fours with the Defamation Action.  *See Nathan v. Takeda Pharms. N.A., Inc.*, 546 F. App'x 178 (4th Cir. 2013) (per curiam) (defamation suit was precluded because it was identical to the plaintiffs prior Title VII action); *Frank v. Home Depot, U.S.A., Inc.*, 481 F. Supp. 2d. 439, 442-43 (D. Md. 2007) (plaintiff's breach of contract claim was identical to plaintiff's earlier suit for discrimination and retaliation).

In addition, the Defamation Action resulted in a final judgment.  The Circuit Court for Baltimore City dismissed plaintiff's lawsuit against UM on the ground that plaintiff failed to file a timely notice of claim with the State Treasurer, as required by Md. Code, S.G. § 12-106(b), and

because he failed to demonstrate good cause to excuse this deficiency. ECF 16-14. Thereafter, the Maryland Court of Special Appeals affirmed the circuit court's ruling. ECF 16-17.

In plaintiff's view, the Circuit Court Order does not constitute a final judgment on the merits, but rather a dismissal based on a "technicality." ECF 25 at 12. However, "[c]ompliance with the conditions laid out in Md. Code, State Gov't § 12-106 is mandatory to a waiver of sovereign immunity. Absent such compliance, the immunity remains intact." *Rivera v. Prince George's Cty. Health Dep't*, 102 Md. App. 456, 471, 649 A.2d 1212, 1220 (1994). Thus, plaintiff's Defamation Action was dismissed because UM was immune from suit, and not because of a mere procedural blunder. And, in Maryland, a dismissal based on sovereign immunity is a final judgment for the purpose of res judicata, because it precludes a plaintiff from prosecuting that claim. *See Annapolis Urban Renewal Auth. v. Interlink, Inc.*, 43 Md. App. 286, 291 (1979); *N. Am. Specialty Ins. Co. v. Bos. Medical Grp*., 170 Md. App. 128, 142, 906 A.2d 1042, 1050 (2006) (discussing *Annapolis Urban Renewal*). Therefore, the third element of res judicata is met.

"[A] losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise." *Dep't of Human Res. v. Thompson*, 652 A.2d 1183, 1192, 652 A.2d 1183, 1192 (1995) (quoting *Astoria Fed. Savs. & Loan v. Solimino*, 501 U.S. 104, 107 (1991)). Allowing plaintiff's claims to proceed would sanction piecemeal litigation, which is precisely what res judicata prohibits. Therefore, because all three requirements of Maryland's res judicata test are satisfied, I shall dismiss the Complaint as against UM.

## IV.    The VA Motion

The VA argues that plaintiff's claims should be dismissed because he was an employee of UM, not the VA. ECF 17-1 at 6-7. But, even if plaintiff was an employee of the VA, it maintains that his claims nonetheless fail.[8]

According to the VA, plaintiff's Title VII claim warrants dismissal because he did not exhaust his administrative remedies, and he has not alleged that the VA took an adverse action against him. *Id.* at 8-10. Plaintiff's tort claims likewise falter on exhaustion grounds and because he fails to allege plausible claims. *Id.* at 10-13. The VA also contends that plaintiff failed to state a plausible violation of due process. *Id.* at 13-14. And, it asserts that the Civil Service Reform Act of 1978 ("CSRA"), 5 U.S.C. §§ 1101 *et seq.*, precludes his constitutional claim. *Id.* at 14-15.

### A.  Title VII Claim

Title VII prohibits an employer, *inter alia*, from discriminating against "any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. It also bars retaliation based on an employee's opposition to conduct made unlawful by Title VII, or for participation in a Title VII investigation or proceeding. 42 U.S.C. § 2000e-3; *see e.g., Young v. United Parcel Serv., Inc.*, 575 U.S. ____, 135 S. Ct. 1338, 1344 (2015); *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 205-06 (4th Cir. 2019); *Ray v. Int'l Paper Co.*, 909 F.3d 661, 666 (4th Cir. 2018); *Netter v. Barnes*, 908 F.3d 932, 937 (4th Cir. 2018); *Strothers v. City of Laurel*, 895 F. 3d 317, 326-27 (4th Cir. 2018); *DeMasters v. Carilion Clinic*, 796 F.3d 409, 416 (4th Cir. 2015); *Boyer-*

---

[8] Plaintiff alleges in his Complaint that he was a "WOC (Without Compensation) VA employee." ECF 5, ¶ 3. The VA counters that this threadbare assertion is insufficient to plausibly state that he was employed by the VA. ECF 17-1 at 6-7. I need not resolve this issue here because plaintiff's claims fail even if he was a VA employee.

*Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 298 (4th Cir. 2015) (en banc); *Freeman v. Dal-Tile Corp.*, 750 F.3d 413, 420 (4th Cir. 2014).

The VA is a federal agency. Title VII's prohibitions apply to private sector employees as well as federal employees. *Nielsen v. Hagel*, 666 F. App'x 225, 227 (4th Cir. 2016) (citing 42 U.S.C. § 2000e-16(a)).[9]  Before filing suit under Title VII, however, a plaintiff must exhaust administrative remedies. *See Patterson v. McLean Credit Union*, 491 U.S. 164, 181 (1989) (private sector employees), *superseded on other grounds by* 42 U.S.C. § 1981(b); *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 832 (1976) (federal employees); *see also McCray v. Md. Dep't of Transp.*, 662 F. App'x 221, 224 (4th Cir. 2016).  Notably, "[t]he administrative remedies available for federal employees are significantly broader" than those available to employees in the private sector. *Laber v. Harvey*, 438 F.3d 404, 416 (4th Cir. 2006) (en banc).  *See* 42 U.S.C. § 2000e-16(c) (setting forth the conditions under which a federal employee may initiate a civil suit under Title VII).

Plaintiff references Title VII only once in his 44-page Complaint.  In a section titled, "Violation Of His Contract Was Done Out Of Intense Malice," plaintiff alleges: "'It is also unlawful to retaliate against an individual for opposing employment practices that discriminate based on sex or for filing a discrimination charge, testifying, or participating in any way in an investigation, proceeding, or litigation under Title VII.' - This was violated by both VA and UM." ECF 5-3, ¶ 115.

---

[9] Title VII initially did not protect federal employees.  *See* 42 U.S.C. § 2000e(b) (excluding the United States from the definition of "employer").  In 1972, however, Congress amended Title VII to provide that a federal employee who has exhausted her administrative remedies "may file a civil action as provided in section 2000e-5 of this title" against the "head of the department, agency, or unit, as appropriate."  42 U.S.C. § 2000e-16(c); *see Bullock v. Napolitano*, 666 F.3d 281, 283-84 (4th Cir. 2012), *cert. denied*, 568 U.S. 882 (2012).

The VA has moved to dismiss, asserting that plaintiff failed to plead a plausible Title VII claim because he does not allege facts showing that the VA took any action against him. ECF 17-1 at 8. Further, the VA argues that plaintiff failed to exhaust his administrative remedies in a timely manner, thus compelling dismissal. *Id.* at 10 (citing 29 C.F.R. § 1614.105(a)(1)).

Congress empowered the EEOC with implementing Title VII. *See Stewart v. Iancu*, 912 F.3d 693, 698 (4th Cir. 2019); *Pueschel v. United States*, 369 F.3d 345, 352-53 (4th Cir. 2004). Pursuant to this delegation of authority, the EEOC has promulgated regulations requiring federal employees to exhaust administrative remedies before filing a civil action for employment discrimination. *See* 29 C.F.R. § 1614.105(a); *see also Pueschel*, 369 F.3d at 352-53. The exhaustion requirement "serves twin objectives: protecting agency authority in the administrative process and 'promot[ing] efficiency' in the resolution of claims." *Stewart*, 912 F.3d at 699 (quoting *Woodford v. Ngo*, 548 U.S. 81, 89 (2006)).

To satisfy Title VII's administrative exhaustion requirement, federal employees "who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age, disability, or genetic information must consult [an EEO] Counselor [in the employee's federal agency] prior to filing [an agency EEO] complaint in order to try to informally resolve the matter." 29 C.F.R. § 1614.105(a); *see also Nielsen*, 666 F. App'x at 227; *Young v. Nat'l Ctr. for Health Serv. Research*, 828 F.2d 235, 237 (4th Cir. 1987). And, the employee "must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory." 29 C.F.R. § 1614.105(a)(1); *see also Nielsen*, 666 F. App'x at 227; *Verrier v. Sebelius*, CCB-09-402, 2010 WL 1222740, at *8 (D. Md. Mar. 23, 2010).

The EEO counselor must "conduct an initial counseling session, during which the counselor must inform the aggrieved party in writing of his rights and responsibilities, and offer

the employee the option of pursuing alternative dispute resolution (ADR)." *Nielsen*, 666 F. App'x at 227 (citing 29 C.F.R. §§ 1614.105(b)(1), (2)). Counseling may lead to the withdrawal of the claim or a settlement agreement between the employee and employer. *See* 29 C.F.R. § 1614.504(a); *Campbell v. Geren*, 353 F. App'x 879, 882 (4th Cir. 2009). If the employee chooses to pursue ADR, the EEO counselor must conduct a "final interview" within 90 days of the initial interview. 29 C.F.R. §§ 1614.105(d), (f). At the end of the 90-day period, if the matter is not resolved, "the counselor must issue a written notice of right to file a formal complaint within the agency." *Nielson*, 666 F. App'x at 227 (citing 29 C.F.R. § 1614.105(d)-(f)). Thereafter, the aggrieved party must file a formal complaint with the agency within 15 days of receipt of notice from the agency. *See* 29 C.F.R. §§ 1614.105(d), 1614.106(b).

Once the agency takes "final action" on the formal complaint, the aggrieved party may appeal the decision to the EEOC or, within 90 days, file a civil action. *See* 42 U.S.C. § 2000e-16; 29 C.F.R. §§ 1614.110, 1614.401, 1614.407(a); *see also Nielsen*, 666 F. App'x at 228. If an employee appeals to the EEOC, the Office of Federal Operations ("OFO") "reviews the record, supplements it if necessary, and then issues a written decision." *Scott v. Johanns*, 409 F.3d 466, 468 (D.C. Cir. 2005) (citing 29 C.F.R. § 1614.404-05). A decision by the OFO is considered to be final, "triggering the right to sue" in court. *Scott*, 409 F.3d at 468 (citing 29 C.F.R. § 1614.405(b)). The employee must initiate the civil lawsuit "[w]ithin 90 days of receipt of the Commission's final decision on an appeal." 29 C.F.R. §§ 1614.407(a), (c). If the agency fails to issue a final decision within 180 days of receipt of the formal complaint, or if the EEOC fails to rule within 180 days of the filing, the aggrieved party may also sue. 29 C.F.R. §§ 1615.407(b), (d).

The Supreme Court recently held that Title VII's administrative exhaustion requirements are not jurisdictional. *Fort Bend Cty. v. Davis*, ___ U.S. ___, 139 S. Ct. 1843, 1846, 1850 (2019). Therefore, a plaintiff's failure to exhaust his administrative remedies before filing suit does not itself prevent the court from hearing the case. However, exhaustion is a "claim-processing rule," and it is "'mandatory' in the sense that a court must enforce the rule if a party 'properly raises it.'" *Id.* (cleaned up) (quoting *Eberhart v. United States*, 546 U.S. 12, 19 (2005) (per curiam)). Thus, while a defendant may waive arguments related to administrative exhaustion, if asserted in a timely fashion such objections may warrant dismissal under Rule 12(b)(6). *See Stewart*, 912 F.3d at 701-702 (holding that Title VII's mandatory 180-day waiting period requirement is a mandatory claim-processing rule and further considering whether dismissal was appropriate under Rule 12(b)(6) for plaintiff's alleged failure to adhere to the rule); *Kenion v. Skanska USA Bldg., Inc.*, RBD-18-3344, 2019 WL 4393296, at *4 (D. Md. Sept. 13, 2019) (discussing the import of *Davis*).

According to plaintiff, he was unlawfully terminated from his fellowship on January 19, 2016. ECF 5, ¶ 4. Therefore, plaintiff had until March 4, 2016, to contact a counselor regarding any discrimination claim against the VA. But, as the VA points out, plaintiff does not allege in his Complaint that he contacted an EEO counselor at any point, let alone within 45 days of his termination. ECF 17-1 at 10.

The right-to-sue letter issued to plaintiff by the EEOC on July 21, 2017, provides additional support for the government's position. ECF 16-9. The letter explains that the EEOC closed its file on plaintiff's charge because it had "adopted the findings of the state or local fair employment practices agency that investigated this charge." *Id.* Notably, UM is copied on the letter, but the VA is not. *Id.* This supports the claim that plaintiff failed to exhaust as to the VA.

In short, plaintiff has not plausibly alleged that he exhausted his administrative remedies before asserting a Title VII claim against the VA. Accordingly, I shall dismiss plaintiff's Title VII claim to the extent that it is lodged against the VA.

## B. Tort Claims

To the extent that plaintiff has sued the VA for intentional infliction of emotional distress (ECF 5, ¶¶ 129-33) and fraud (*id*. ¶ 134-42), the VA maintains, *inter alia*, that these claims must be dismissed because plaintiff failed to exhaust his administrative remedies under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671 *et seq.*

"'As a general matter, the United States is immune from suit unless it waives that immunity.'" *Sanders v. United States*, 937 F.3d 316, 327 (4th Cir. 2019) (quoting *In re KBR, Inc., Burn Pit Litig*., 744 F.3d 326, 341 (4th Cir. 2014)); *see also Dalehite v. United States*, 346 U.S. 15, 30 (1953) ("[N]o action lies against the United States unless the legislature has authorized it."). Thus, a plaintiff may recover money damages against the United States only to the extent that the United States expressly permits such a suit. *See, e.g*., *Welch v. United States*, 409 F.3d 646, 650 (4th Cir. 2005); *see also Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95 (1990).

The FTCA constitutes such a waiver. In particular, the FTCA "authorizes certain tort claims against the United States 'where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" *Sanders*, 937 F.3d at 327 (quoting 28 U.S.C. § 1346(b)(1)). Put differently, the FTCA waives sovereign immunity for "claims brought against the United States based on the negligence or wrongful acts or omissions of its employees committed within the scope of employment[.]" *Wood v. United States*, 845 F.3d 123, 127 (4th Cir. 2017) (citing 28 U.S.C. §§ 1346(b)(1), 2671-2680).

However, the United States and its agencies are not liable for *all* torts committed by federal employees. *See* 28 U.S.C. § 2679(b)(1); *see, e.g.*, *Salazar v. Ballesteros*, 17 F. App'x 129, 130 (4th Cir. 2001) (explaining that the FTCA "allows the United States to be sued for certain torts committed by its employees"). Pursuant to 28 U.S.C. § 1346(b)(1), the FTCA's waiver of sovereign immunity operates, subject to certain exceptions, as to claims

> for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

Notably, as to claims that are "cognizable" under the FTCA, the FTCA is the "exclusive" remedy against the United States or its agencies. *Id.* § 2679(a).

To assert a claim under the FTCA, the plaintiff must first exhaust his administrative remedies. 28 U.S.C. § 2675(a). Specifically, the FTCA provides that a tort claim against the United States "shall be forever barred" unless (1) the claim is presented to the "appropriate Federal agency within two years after such claim accrues," and (2) the claim is brought to federal court "within six months" after the agency acts on the claim. *Id.* § 2401(b).

The Fourth Circuit has repeatedly stated that "the requirement of filing an administrative claim is jurisdictional and may not be waived." *Henderson v. United States*, 785 F.2d 121, 123 (4th Cir. 1986); *accord Drew v. United States*, 217 F.3d 193, 196 (4th Cir. 2000) ("Where . . . a claim is not first presented to the appropriate agency, the district court must, pursuant to Fed. R. Civ. P. 12(b)(1), dismiss the action for want of subject matter jurisdiction."), *aff'd en banc by equally divided court*, 231 F.3d 927 (4th Cir. 2000), *cert. denied*, 532 U.S. 1037 (2001); *Ahmed v. United States*, 30 F.3d 514, 516 (4th Cir. 1994). In contrast, the limitations period is a claim-processing rule. Therefore, failure to comply with it does not compel dismissal, unless raised by

the defendant. *See Raplee v. United States*, 842 F.3d 328, 335 (4th Cir. 2016) (noting that "the FTCA's limitations period is not a jurisdictional rule but a claims-processing one") (citing *United States v. Kwai Fun Wong*, ___ U.S. ___, 135 S. Ct. 1625, 1638 (2015)); *cf. Davis*, 139 S. Ct. at 1852 (concluding that a claim-processing rule under Title VII is not jurisdictional).

Plaintiff has not alleged that he filed the required administrative claims with the VA, the agency that allegedly caused his injury. Accordingly, his tort claims are barred by the FTCA's jurisdictional notice requirement. It follows that plaintiff's fraud and IIED claims are subject to dismissal.

### C. Due Process Claim

The Complaint asserts, again and again, that plaintiff's termination violated the Due Process Clause of the United States Constitution. *See, e.g.*, ECF 5, ¶ 19 (alleging that he was "summarily terminated" in an "ad hoc manner"); ¶¶ 20-70 (pleading that termination violated due process because UM fired him without investigating the sexual harassment allegations; the UM supervisors who terminated him were "clearly conflicted"; he was not issued a termination letter; he did not receive 60 days' notice as required by the Offer Letter; he was fired "without 'Due Cause'"; "no investigation found Plaintiff guilty"; and, his termination "was carried out in an extremely arbitrary and whimsical manner"). In response, the VA argues, *inter alia*, that, even assuming plaintiff was a VA employee, his failure to comply with the Civil Service Reform Act of 1978 forecloses his due process claim. ECF 17-1 at 14-15; ECF 36 at 5-6.

The CSRA sets forth an "integrated scheme" for "evaluating adverse personnel actions against federal employees." *United States v. Fausto*, 484 U.S. 439, 443, 445 (1988); *see Lindahl v. Office of Pers. Mgmt.*, 470 U.S. 768, 773-74 (1985); *Chin-Young v. United States*, 774 F. App'x 106, 111 (4th Cir. 2019); *Fleming v. Spencer*, 718 F. App'x 185, 186 (4th Cir. 2018) (per curiam).

In so doing, the CSRA creates a uniform procedure for resolving federal employment disputes. *Fausto*, 484 U.S. at 444 (noting Congress intended the CSRA to replace the previous "haphazard" review process that plagued the civil service system). Notably, the CSRA applies "even for employees who bring constitutional challenges" against their agency employer. *Elgin v. Dep't of Treasury*, 567 U.S. 1, 13 (2012) (due process claim lodged by federal employee against executive agency was controlled by the CSRA).

The process provided under the CSRA varies depending on the severity of the alleged adverse employment action. For severe adverse employment actions, including termination, the employee may appeal the agency's decision directly to the Merit System Protection Board ("MSPB"). 5 U.S.C. §§ 7512, 7513(d); *see Elgin*, 567 U.S. at 5. If the employee does not prevail before the MSPB, he may obtain judicial review of that decision in the Federal Circuit. 5 U.S.C. § 7703; *Elgin*, 567 U.S. at 5.

Employment decisions that are not considered "adverse actions" under the CSRA are not appealable to the MSPB. Rather, employees may file a complaint with the Office of Special Counsel ("OSC"), which must investigate the allegation "to determine whether there are reasonable grounds" to believe a violation occurred. 5 U.S.C. § 1214(a)(3). If the OSC concludes that a violation may have occurred, it must report its determination to the MSPB and the employing agency. *Id.* § 1214(b)(2)(C). However, if the OSC does not find cause to pursue the complaint, the CSRA does not allow the employee to seek further administrative or judicial review. *See Fleming*, 718 F. App'x at 187.[10]

---

[10] A carve-out in the CSRA permits an employee challenging an adverse employment action that includes allegations of discrimination (*i.e.*, a "mixed-case"), either to bring an action before the MSPB or file an EEO complaint with the agency. *See* 29 C.F.R. §§ 1614.103(a), 1614.302(b); *see also Pueschel v. Peters*, 577 F.3d 558, 563 (4th Cir. 2009). And, if the employee choses to file an EEO complaint, he may appeal the final agency decision either to the EEOC or

The Fourth Circuit has stated: "The CSRA plainly precludes extrastatutory judicial review of constitutional claims that are asserted before an employee has exhausted his remedies available under the statute." *Fleming*, 718 F. App'x at 188.

Plaintiff avers that he "exhausted all his administrative remedies and avenues available to him," including by contacting his supervisor, Dr. Lal; meeting with UM's Title IX Director; and sending a letter "to chief of Staff and Director of VA, [which] was most unhelpful, non-cooperative, and negative." ECF 26 at 5. However, nowhere in his Complaint does plaintiff allege that he sought review from the MSPB or the OSC. Consequently, even assuming that plaintiff was an employee of the VA, he has not plausibly alleged that he exhausted his administrative remedies under the CSRA. *See Hecht v. Hargan*, GJH-17-3786, 2019 WL 498819, at *1-2 (D. Md. Feb. 8, 2019) (dismissing plaintiff's due process claim because she failed to plead that she satisfied the CSRA's procedural strictures).

Accordingly, plaintiff's due process claim must be dismissed for lack of subject matter jurisdiction.

## V.    Motion for Entry of Default

After the motions were fully briefed, plaintiff filed a "Request to Clerk of Court to Enter Order of Default" against the VA, pursuant to Fed. R. Civ. P. 55(a). ECF 40 ("Motion for Entry of Default"). It is supported by plaintiff's affidavit. ECF 40-1. According to plaintiff, he is

---

to the appropriate district court. 29 C.F.R. §§ 1614.401(a), 1614.407; *see Eastridge v. Brost*, TDC-18-3770, 2019 WL 2124895, at *2 (D. Md. May 15, 2019) (describing the CSRA's approach to "mixed cases"). To the extent that plaintiff's suit could be construed as a "mixed-case," it nonetheless must be dismissed because, as discussed above, plaintiff failed to comply with Title VII's exhaustion requirements.

entitled to an order of default because the VA "has failed to plead or otherwise present its defense against" his opposition to the VA Motion. *Id.* at 1.

Rule 55 of the Federal Rules of Civil procedure provides a two-step procedure for obtaining a default judgment. First, Rule 55(a) provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a); *see also Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981); *Teamsters Local 639-Emp'rs Health Trust v. Boiler and Furnace Cleaners, Inc.*, 571 F. Supp. 2d 101, 106 (D.D.C. 2008); WRIGHT & MILLER, § 2682 ("Prior to obtaining a default judgment under either Rule 55(b)(1) or Rule 55(b)(2), there must be an entry of default as provided by Rule 55(a)."). Once such "default" is entered, the next step is entry of a "default judgment" resulting from such "default." Second, the plaintiff must move for a default judgment, which is governed by Rule 55(b). Rule 55(b)(1) provides that the clerk may enter a default judgment if the plaintiff's claim is "for a sum certain or a sum that can be made certain by computation." Fed. R. Civ. P. 55(b).[11]

Plaintiff misunderstands the operation of Rule 55. An entry of default is appropriate where a party fails to respond to one of the pleadings enumerated in Fed. R. Civ. P. 7. *See* WRIGHT & MILLER § 2682 ("Entry of default for failure to plead or otherwise defend . . . applies to any of the pleadings listed in Rule 7(a)."). But, the VA did respond.

Following the government's removal of plaintiff's action to this Court, the VA timely moved to dismiss the complaint or, in the alternative, for summary judgment. ECF 17. A motion to dismiss made under Rule 12(b)(6) is considered "defending" an action under Rule 55. *See*

---

[11] If the sum is not certain or ascertainable through computation, the court looks to Rule 55(b)(2).

WRIGHT & MILLER § 2682 ("The words 'otherwise defend' refer to the interposition of various challenges to such matters as service, venue, and the sufficiency of the prior pleading, any of which might prevent a default if pursued in the absence of a responsive pleading."). Therefore, "[t]imely serving and filing a motion to dismiss under Fed. R. Civ. P. 12(b), precludes entry of default." *Langdon v. Google, Inc.*, 474 F. Supp. 2d 622 (D. Del. 2007); *accord Foster v. Howard Cmty. Coll.*, RBD-13-1395, 2014 WL 758027, at at *4 (D. Md. Feb. 24, 2014) (rejecting motion for entry default because defendant filed a timely motion to dismiss).

In sum, I shall deny plaintiff's motion for entry of default.

## VI.     Conclusion

For the foregoing reasons, I shall grant the UM Motion (ECF 16), and I shall grant the VA Motion (ECF 17). Because I grant the motions, I shall deny, as moot, the Motion to Supplement (ECF 37). Further, I shall deny the Motion for Entry of Default (ECF 40).

An Order follows, consistent with this Memorandum Opinion.


Date: December 27, 2019                    _____/s/_____
                                           Ellen L. Hollander
                                           United States District Judge