IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LIJO PANGHAT, M.D.
*Plaintiff*

v.                                        Civil Action No. ELH-19-994

BALTIMORE VETERANS AFFAIRS
MEDICAL CENTER, *et al.*
*Defendants.*

## MEMORANDUM OPINION

This Memorandum Opinion resolves motions filed by the self-represented plaintiff, Lijo

Panghat, M.D. in his employment discrimination case.  He asks the Court to reconsider its

dismissal of his suit (ECF 47), and he seeks recusal of the judge on the grounds of conflict of

interest, bias, and prejudice.  ECF 52.

Plaintiff sued his former employers, Baltimore Veterans Affairs Health Center ("VA") and

the University of Maryland, Baltimore ("UM"), alleging that defendants fired him in retaliation

for lodging a sexual harassment complaint against his supervisor.  ECF 5 (the "Complaint").  The

Complaint asserted claims, *inter alia*, for denial of due process; misrepresentation; intentional

infliction of emotional distress; breach of contract; and retaliation, in violation of Title VII of the

Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII").

The Court dismissed plaintiff's suit in a Memorandum Opinion (ECF 42) and Order (ECF

43) of December 27, 2019.  Unhappy with that ruling, Dr. Panghat has filed a "Motion to

Reconsider" (ECF 47), supported by an Affidavit.  ECF 47-1.  UM and the VA oppose the Motion

to Reconsider.  ECF 48 (UM); ECF 49 (VA).  Plaintiff has replied.  ECF 50; ECF 51.  In addition,

plaintiff has filed a "Motion for Recusal" (ECF 52) supported by four exhibits.  ECF 52-1 to ECF

52-4.  UM opposes the Motion for Recusal (ECF 53), and plaintiff has replied.  ECF 54.  The VA

has not responded.

No hearing is necessary to resolve the motions.  *See* Local Rule 105.6.  For the reasons that

follow, I shall deny both the Motion to Reconsider and the Motion for Recusal.

## I.    Background[1]

On January 23, 2019, in the Circuit Court for Baltimore City, Dr. Panghat filed a 44-page

Complaint (ECF 5) against UM and the VA, along with thirteen exhibits.  ECF 5-2 to ECF 5-14.

The United States timely removed the case to this Court on behalf of the VA on April 2, 2019.

ECF 1; *see also* ECF 10.  Thereafter, UM filed a motion to dismiss (ECF 16) under Fed. R. Civ.

P. 12(b)(1) and 12(b)(6).  The VA also moved to dismiss under Rules 12(b)(1) and 12(b)(6) and,

in the alternative, it sought summary judgment under Rule 56.  ECF 17.  Plaintiff opposed the

motions.  ECF 25 (UM); ECF 26 (VA).  Defendants replied. ECF 27 (UM); ECF 36 (VA).

Thereafter, on November 7, 2019, plaintiff filed a "Motion to Submit New Evidence To

Further Support The Case of Dr. Panghat" (ECF 37), along with an Affidavit and two exhibits.

ECF 37-1 to ECF 37-3.  UM filed an opposition to the motion (ECF 38), and plaintiff replied. ECF

39.  Then, on December 13, 2019, plaintiff filed a "Request to Clerk of Court to Enter Order of

Default."  ECF 40.  In that motion, plaintiff requested an entry of default against the VA on the

ground that the VA "failed to plead or otherwise present its defense against" plaintiff's opposition

in accordance with the time provided "as per Court Rules . . . ."  ECF 40 at 1.  The VA opposed

that motion on December 20, 2019.  ECF 41.

As noted, in a Memorandum Opinion (ECF 42) and Order (ECF 43) of December 27, 2019,

---

[1] I incorporate here by reference the factual and procedural background set forth in ECF 42 at 2-7.

I granted defendants' motions to dismiss, denied plaintiff's various filings, and directed the Clerk to close the case. With respect to UM, I determined that plaintiff's claims were foreclosed by Eleventh Amendment sovereign immunity and the doctrine of res judicata. As the Court explained, the Eleventh Amendment generally bars suits against State entities, such as UM, unless an exception to sovereign immunity applies. ECF 42 at 19. The Court observed that the Maryland General Assembly has waived sovereign immunity for breach of contract claims that are filed within one year of the date on which the claim arose or the date on which the contract was completed. *Id.* at 20 (discussing Md. Code (2014 Repl. Vol.), §§ 12-201(a), of the State Government Article ("S.G.")). Likewise, Maryland has waived its sovereign immunity for tort claims, provided that the plaintiff gives notice of his claim to the State Treasurer within one year after the injury to the person or property that is the basis of the suit. ECF 42 at 20-21 (discussing the Maryland Tort Claims Act ("MTCA"), S.G. §§ 12-101 *et. seq.*).

However, plaintiff failed to satisfy these conditions precedent to Maryland's waivers of sovereign immunity. The Court found that "plaintiff's breach of contract claim was filed outside the one-year period for the limited waiver of immunity and is therefore barred" because "[a]t the latest, the alleged breach occurred when plaintiff was terminated on March 18, 2016," but "plaintiff did not file this action until January 18, 2019." ECF 42 at 20. Likewise, plaintiff's tort claims did not satisfy the MTCA's notice requirement because he did not submit a notice of claim to the State Treasurer until November 2017, more than one year after his termination. *Id.* at 21. Therefore, "because plaintiff's breach of contract claim and his tort claims are barred by Eleventh Amendment immunity," the Court dismissed those claims as against UM. *Id.*

Further, the Court concluded that plaintiff's remaining claims are foreclosed by res judicata, a doctrine that precludes parties from re-litigating claims that were or could have been

litigated in a previous action that resulted in a final judgment. *See id.* at 22. Under Maryland law, res judicata bars claims where "'(1) the parties in the present litigation are the same or in privity with the parties to the earlier litigation; (2) the claim presented in the current action is identical to that determined or that which could have been raised and determined in the prior litigation; and (3) there was a final judgment on the merits in the prior litigation.'" *Id.* (quoting *Cochran v. Griffith Energy Servs., Inc.*, 426 Md. 134, 140, 43 A.3d 999, 1002 (2012)).

Applying the doctrine to plaintiff's suit compelled the conclusion that plaintiff was barred from litigating his termination by UM in this Court. *Id.* at 23. In particular, Dr. Panghat had sued UM in a Maryland State Court in June 2017, alleging that the termination letter that UM sent him was defamatory. *See id.* at 5; *see also Panghat v. Univ. of Md., Balt.*, 24-C-17-003267 (Balt. City Cir. Ct.). The case *sub judice* is "on all fours" with the plaintiff's State court action, as both are predicated on the same nucleus of facts: plaintiff's alleged wrongful termination by UM. ECF 42 at 24. And, the State court action resulted in a final judgment. *Id.* at 24-25. Accordingly, the Court explained that res judicata warranted the dismissal of plaintiff's suit against UM. *Id.* at 25.

As for the VA, the Court determined that plaintiff failed to state a plausible Title VII claim because he did not contact an EEO counselor within 45 days of his termination and thus failed to exhaust his administrative remedies. ECF 42 at 30. Similarly, plaintiff's tort claims are barred because he did not exhaust his administrative remedies under the Federal Tort Claims Act, 28 U.S.C. §§ 2671 *et seq.* ECF 42 at 33. And, plaintiff's constitutional claims were precluded by the Civil Service Reform Act of 1978 ("CSRA"), 5 U.S.C. §§ 1101 *et seq.* ECF 42 at 35.

With respect to plaintiff's motion for entry of default, the Court explained that "[a]n entry of default is appropriate where a party fails to respond to one of the pleadings enumerated in Fed. R. Civ. P. 7." *Id.* at 36. However, as the Court observed, the VA "did respond" to plaintiff's

Complaint, when it "moved to dismiss the complaint or, in the alternative, for summary judgment." *Id.* Accordingly, I denied plaintiff's motion for entry of default. *Id.* at 37.

Plaintiff's Motion to Reconsider and Motion for Recusal followed.

## II. Discussion[2]

### A. Motion for Recusal

In the Motion for Recusal, which spans 28 pages, Dr. Panghat details what he regards as "a large number of shortcomings and irregularities" in the Court's decision dismissing his suit, which he asserts warrant my recusal. ECF 52 at 1. First, plaintiff fixates on the VA's reply (ECF 36) to his opposition (ECF 26) to the VA's motion to dismiss or for summary judgment (ECF 17). According to plaintiff, the VA's reply was tardy by one day and therefore was "invalid and inadmissible." ECF 52 at 3. Nonetheless, plaintiff claims that the Court erroneously relied on this filing in its Memorandum Opinion, as evidenced by the statement "'But, the VA did respond.'" *Id.*

Moreover, plaintiff claims that the VA's reply constitutes an improper ex parte communication, because the VA never served him with a copy of the filing, *id.* at 3, which constitutes a "grave irregularity . . . ." *Id.* at 4. Consequently, plaintiff asserts that I violated Maryland Rule 1-351, "Order Upon Ex Parte Application Prohibited-Exceptions,"[3] and Canon XVI of the Canons of Judicial Ethics, which generally prohibits ex parte communications. *Id.* And, Dr. Panghat contends that he was deprived of his "rightful opportunity" to respond to the VA's reply. *Id.* at 5.

---

[2] Because plaintiff is self-represented, his pleadings must be "'liberally construed'" and "'held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted).

[3] Notably, Maryland Rule 1-351 governs the conduct of Maryland judges, not federal judges.

Further, plaintiff claims that I am biased because I once worked as an Assistant Attorney General in the Civil Division of the Office of the Maryland Attorney General and as an Assistant United States Attorney in the District of Maryland. *Id.* at 7-8.[4] In plaintiff's view, these positions give rise to the "genuine possibility that [I] could be swayed by partisan interests and [my] outlook may not be entirely impartial." *Id.* at 8.

Plaintiff also identifies a litany of "errors and inconsistencies" in the Memorandum Opinion that "may be better noticed recognized [sic] by a different judge who would understandably have a fresh and unbiased perspective on these faults." *Id.* "In the interest of brevity," plaintiff purportedly "highlights" only the "major shortcomings" with the Court's ruling; he then relitigates his case in excruciating detail over the course of twenty pages. *Id.* at 8-27. He asserts that, in light of the "numerous irregularities and wrongdoings" committed by this Court, due process warrants my disqualification and the transfer of his case to a different judge. *Id.* at 27-28,

Although plaintiff did not cite to 28 U.S.C. §§ 144 and 455, they are relevant here. Section 144 is titled, "Bias or prejudice of judge," and § 455 is titled "Disqualification of justice, judge, or magistrate judge." Under both § 144 and § 455, the judge whose objectivity is being challenged by a motion to recuse is the one who should first review the matter and render the disqualification decision.

Section 455(a), which focuses on the appearance of impropriety, is intended to promote confidence in the judiciary. *Liljeberg v. Health Serv. Acquisition Corp.*, 486 U.S. 847, 865 (1988). It states, 28 U.S.C. § 455(a): "Any justice, judge, or magistrate judge of the United States shall disqualify [herself] in any proceeding in which [her] impartiality might reasonably be questioned."

---

[4] I served as an Assistant Maryland Attorney General in 1979. And, from 1979 to 1983, I served as an Assistant United States Attorney in the District of Maryland.

The term "proceeding" in § 455 includes the usual stages of a criminal trial and appellate review, as well as "other stages of litigation." *Id.* § 455(d)(1); *see also United States v. Cherry*, 330 F.3d 658, 666 (4th Cir. 2003) (the presiding judge has the discretion to recuse herself).

As the Supreme Court has observed, § 455(a) "deals with the *objective appearance of partiality*." *Liteky v. United States*, 510 U.S. 540, 553 n.2 (1994) (emphasis in *Liteky*). Under this "'objective standard,'" the court asks "'whether the judge's impartiality might be questioned by a reasonable, *well-informed* observer who assesses *all the facts and circumstances*.'" *United States v. Stone*, 866 F.3d 219, 230 (4th Cir. 2017) (emphasis in *Stone*) (quoting *United States v. DeTemple*, 162 F.3d 279, 286 (4th Cir. 1998)); *see also In re Beard*, 811 F.2d 818, 827 (4th Cir. 1987). Thus, disqualification is warranted "only if it appears that [a judge] harbors an aversion, hostility or disposition of a kind that a fair minded person could not set aside when judging the dispute." *Liteky*, 510 U.S. at 558.

Notably, a "presiding judge is not . . . required to recuse [herself] simply because of 'unsupported, irrational or highly tenuous speculation.'" *Cherry*, 330 F.3d at 665 (quoting *DeTemple*, 162 F.3d at 287); *see United States v. Lentz*, 524 F.3d 501, 504 (4th Cir. 2008). "The alleged bias must derive from an extra-judicial source [and] . . . *result in an opinion on the merits on a basis other than that learned by the judge from his participation in the matter*." *Beard*, 811 F.2d at 827 (emphasis added). Put simply, "[t]he proper test to be applied is whether another with knowledge of all of the circumstances might reasonably question the judge's impartiality." *Id.*

Section 455(b) of Title 28 of the United States Code enumerates circumstances in which a federal judge "shall" disqualify herself, because partiality is presumed. As is relevant here, § 455(b)(1) provides that a judge shall disqualify herself from a proceeding if she "has a personal bias or prejudice concerning a party . . . ." As with § 455(a), the alleged bias or prejudice

referenced in § 455(b)(1) must stem from an extrajudicial source. *Belue v. Leventhal*, 640 F.3d 567, 572-73 (4th Cir. 2011). Also of import here, § 455(b)(3) compels disqualification where the judge "has served in governmental employment *and in such capacity participated as counsel, adviser or material witness concerning the proceeding* or expressed an opinion concerning the merits of the particular case in controversy." (Emphasis added).

Section 144 states, in pertinent part:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

The standard for recusal under 28 U.S.C. § 144 requires the plaintiff's affidavit in support of his motion to establish adequately that the judge has a "personal bias or prejudice either against [the plaintiffs] or in favor of any adverse party." *See Sine v. Local No. 992 Int'l Bhd. of Teamsters*, 882 F.2d 913, 914 (4th Cir. 1989). Notably, "'[a]ssertions merely of a conclusionary nature are not enough, nor are opinions and rumors.'" *United States v. Farkas*, 669 F. App'x 122, 123 (4th Cir. 2016) (per curiam) (quoting *United States v. Haldeman*, 559 F.2d 31, 34 (D.C. Cir. 1976)).

In *Sine*, 882 F.2d at 914, the Court said: "A judge against whom an affidavit under § 144 is filed must pass upon the legal sufficiency of the facts alleged." For an affidavit to be legally sufficient under § 144, it must allege "*personal* bias or prejudice caused by an extrajudicial source other than what the judge has learned or experienced from [her] participation in the case." *Id.* (emphasis in *Sine*) (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966)). In other words, the "nature of the bias must be personal rather than judicial." *Sine*, 882 F.2d. at 914 (citing *Shaw v. Martin*, 733 F.2d 304, 308 (4th Cir. 1984)).

A "clear and convincing" standard of review is applied to the determination of whether the

8

facts in the affidavit are legally sufficient to convince a reasonable person that a personal bias or prejudice exists. *Chitimacha Tribe v. Harry L. Laws Co.*, 690 F.2d 1157, 1165 (5th Cir. 1982). If the defendant's affidavit is legally sufficient, the Court must recuse itself. *Sine*, 882 F.2d at 914. On appeal, a presiding judge's denial of a recusal motion is reviewed for abuse of discretion. *Stone*, 866 F.3d at 229; *United States v. Mitchell*, 886 F.2d 667, 671 (4th Cir. 1989).

Applying these standards here, plaintiff's recusal motion must be denied. Plaintiff's objections concerning the VA's reply are unfounded. For one thing, the VA was not required to file a reply. To be sure, it chose to do so, and the reply was filed one day past the deadline. *See* ECF 33 (granting the VA until October 30, 2019, to file a reply); ECF 36 (VA reply filed on October 31, 2019). But, this fact is of no legal significance.

As explained in the Court's Memorandum Opinion (ECF 42 at 36), the VA's failure to reply to plaintiff's opposition in a timely manner did not constitute a "fail[ure] to plead or otherwise defend" an action under Fed. R. Civ. P. 55, such that plaintiff was entitled to an entry of default. In response to plaintiff's Complaint, the VA filed a motion to dismiss or, in the alternative, for summary judgment. *See* ECF 17. For the purpose of Rule 55, that motion unequivocally qualified as defending an action. *See* ECF 42 at 36. Therefore, plaintiff was not entitled to an entry of default because the reply was belatedly filed. In sum, the Court's observation that "the VA did respond" to plaintiff's suit is not an inaccurate statement of either law or fact. *Id.*

Equally irrelevant is plaintiff's assertion that he was not served with a copy of the VA's reply. It is unclear how the VA's alleged failure to serve plaintiff constitutes misconduct by the Court. In any event, plaintiff's assertion that he was "deprived" of the right to file a surreply is simply wrong. Notably, plaintiff did not have an unfettered right to respond to the reply via surreply, whether the reply was filed timely or untimely. The Local Rules require that a party

obtain leave of Court to file a surreply in response to a reply, and such leave is granted on a limited

basis, within the Court's discretion. *See* Local Rule 105.2(a).; *see, e.g.*, *EEOC v. Freeman*, 961 F.

Supp. 2d 783, 801 (D. Md. 2013), *aff'd in part*, 778 F.3d 463 (4th Cir. 2015). A surreply is

generally permitted if needed "to contest matters presented to the court for the first time" in the

opposing party's reply. *Clear Channel Outdoor, Inc. v. Mayor & Council of Balt.*, 22 F. Supp. 3d

519, 529 (D. Md. 2014) (cleaned up). There was no such need here.

Moreover, nothing in the VA's reply swayed my analysis. Indeed, this case was

straightforward; Dr. Panghat's suit against the VA was barred for the simple reason that he did not

exhaust his administrative remedies.

To the extent that Dr. Panghat argues that I should recuse myself because he disagrees with

my rulings, his motion is frivolous. It is well settled that "judicial rulings alone almost never

constitute a valid basis for a bias or partiality motion" because they "cannot possibly show reliance

upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of

favoritism or antagonism required [to warrant recusal] when no extrajudicial source is involved."

*Liteky*, 510 U.S. at 555. Thus, plaintiff's dissatisfaction with my decision is "proper grounds for

appeal, not for recusal." *Id.*

Grasping for straws, plaintiff alleges prejudice and bias based on my prior service (very

long ago) as a Maryland Assistant Attorney General and as an Assistant United States Attorney.

However, recusal on the basis of prior government service is appropriate only where the judge

served "as counsel, adviser or material witness concerning the proceeding [at issue] or expressed

an opinion *concerning the merits of the particular case in controversy*." 28 U.S.C. § 455(b)(3)

(emphasis added). This rule accords with the Fourth Circuit's observation that "litigants are

entitled to a judge free of personal bias, but not to a judge without any personal history before

appointment to the bench." *Sierra Club v. Simkins Indus., Inc.*, 847 F.2d 1109, 1117 (4th Cir. 1988); *see, e.g.*, *United States v. Miller*, 221 F. App'x 182, 185 (4th Cir. 2007) (per curiam) (holding that recusal was not warranted where judge was a United States Attorney while the FBI investigated the defendant); *United States v. Adler*, 48 F. App'x 463, 469 (4th Cir. 2002) (per curiam) (summarily rejecting defendant's contention that the judge was biased because of his service with a government agency 26 years before presiding over defendant's trial).

My government service predates by decades the events giving rise to plaintiff's case. Indeed, plaintiff has alleged no facts beyond mere prior employment that would cause a reasonable, well-informed observer to doubt my ability to adjudicate the case before me fairly and impartially. Consequently, this argument cannot serve as a basis for recusal. *See Cherry*, 330 F.3d at 665.

At bottom, plaintiff, having failed to prevail on the merits, has resorted to impugning the integrity of the Court in the hope of having his case reassigned to another United States District Judge. Dr. Panghat can rest assured that if any reasonable grounds existed for my recusal, I would have done so, if for no other reason than to spare myself from having to wade through his voluminous submissions, none of which are meritorious. However, simply being the target of plaintiff's disparagement does not justify my recusal. Indeed, a bar that low would empower litigants to shop freely for a judge of their liking, corroding the rule of law and the public's confidence in an impartial judiciary, which are the very values that judicial recusal is designed to safeguard. *See N.Y. State Bd. of Elections v. Lopez Torres*, 552 U.S. 196, 212 (2008) (Kennedy, J., concurring) ("The rule of law, which is a foundation of freedom, presupposes a functioning judiciary respected for its independence, its professional attainments, and the absolute probity of its judges.").

My responsibilities require me to resolve dutifully those cases that I am assigned. I have

done so here.  If plaintiff disagrees with my decision, he may proceed to the Fourth Circuit.

Accordingly, plaintiff's Motion for Recusal shall be denied.

## B.  Motion to Reconsider

I next consider plaintiff's Motion to Reconsider.  ECF 47.

The Federal Rules of Civil Procedure do not contain an express provision for a "motion for reconsideration" of a final judgment. *Katyle v. Penn Nat'l Gaming, Inc.,* 637 F.3d 462, 470 n.4 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011). But, to avoid elevating form over substance, a motion to reconsider may be construed as a motion to alter or amend judgment under Fed. R. Civ. P. 59(e), or a motion for relief from judgment under Fed. R. Civ. P. 60(b). *MLC Auto., LLC v. Town of S. Pines*, 532 F.3d 269, 278-80 (4th Cir. 2008).

Fed. R. Civ. P. 59(e) is captioned "Motion to Alter or Amend a Judgment." It states: "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." A motion filed outside the 28-day window set forth in Rule 59(e) is considered under Rule 60, captioned "Relief from a Judgment or Order." *See In re Burnley*, 988 F.2d 1, 2-4 (4th Cir. 1992) (construing untimely Rule 59(e) motion as a Rule 60(b) motion). Fed. R. Civ. P. 60(b) sets forth a variety of grounds for relief from a final judgment or order. It permits a party to file a motion to "relieve [the] party . . . from a final judgment" for "any . . . reason that justifies relief," Fed. R. Civ. P. 60(b)(6), as well as other enumerated reasons. *See Liljeberg*, 486 U.S. at 863 (noting that 28 U.S.C. § 455 "does not, on its own, authorize the reopening of closed litigation" but that Rule 60(b) "provides a procedure whereby, in appropriate cases, a party may be relieved of a final judgment").

The timing of the filing of the motion is the key factor in ascertaining which rule applies. The Fourth Circuit has said that "a motion filed under both Rule 59(e) and Rule 60(b) should be

analyzed only under Rule 59(e) if it was filed no later than [28] days after entry of the adverse judgment and seeks to correct that judgment." *Robinson v. Wix Filtration Corp. LLC*, 599 F.3d 403, 412 (4th Cir. 2010) (citing *Small v. Hunt*, 98 F.3d 789, 797 (4th Cir. 1996)); *see In re Burnley*, 988 F.2d at 2-3; *Lewis v. McCabe, Weisberg & Conway, LLC*, DKC-13-1561, 2015 WL 1522840, at *1 (D. Md. Apr. 1, 2015). Defendants' Motion to Reconsider was filed on January 24, 2020 (ECF 47), within twenty-eight days of the filing of the Order on December 27, 2019 (ECF 42). Therefore, Rule 59(e) applies here.

Although the plain language of Rule 59(e) does not provide a particular standard by which a district court should evaluate a motion to alter or amend judgment, the Fourth Circuit has instructed that a Rule 59(e) motion "'can be successful in only three situations: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence . . .; or (3) to correct a clear error of law or prevent manifest injustice.'" *Wojcicki v. SCANA/SCE&G*, 947 F.3d 240, 246 (4th Cir. 2020) (alteration in *Wojcicki*) (quoting *Zinkand v. Brown*, 478 F.3d 634, 637 (4th Cir. 2007)); *see United States ex rel. Carter v. Halliburton Co.*, 866 F.3d 199, 206 (4th Cir. 2017); *Ingle ex rel. Estate of Ingle v. Yelton*, 439 F.3d 191, 197 (4th Cir. 2006).

Rule 59(e) "permits a district court to correct its own errors, 'sparing the parties and the appellate courts the burden of unnecessary appellate proceedings.'" *Pac. Ins. Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (quoting *Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995)), *cert. denied*, 525 U.S. 1104 (1999). But, the Fourth Circuit has cautioned that a party may not use a Rule 59(e) motion to "raise arguments which could have been raised prior to the issuance of the judgment," or to "argue a case under a novel legal theory that the party had the ability to address in the first instance." *Id.*; *see also Nat'l Ecol. Found. v. Alexander*, 496 F.3d 466, 477 (6th Cir. 2007) ("Rule 59(e) motions are 'aimed at

reconsideration, not initial consideration.'") (citation omitted). Nor does a Rule 59(e) motion "'enable a party to complete presenting his case after the court has ruled against him.'" Matter of Reese, 91 F.3d 37, 39 (7th Cir. 1996) (citation omitted); *see* 11 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2810.1 (3d ed. 2019) ("In practice, because of the narrow purposes for which they are intended, Rule 59(e) motions typically are denied.").

Notably, "[m]ere disagreement [with a court's ruling] does not support a Rule 59(e) motion." *Hutchinson v. Staton*, 994 F.2d 1076, 1082 (4th Cir. 1993); *see Pettis v. Nottoway Cty. Sch. Bd.*, 592 F. App'x 158, 161 (4th Cir. 2014). Indeed, "'reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly.'" *Pac. Ins. Co.*, 148 F.3d at 403 (citation omitted); *see also* WRIGHT & MILLER, § 2810.1.

Liberally construed, none of the contentions in plaintiff's Motion to Reconsider cause me to question this Court's order dismissing his case. As an initial matter, plaintiff identifies no intervening change in the law. And, although plaintiff proffers "new evidence has just been revealed," none of the allegations in his Affidavit (ECF 47-1) have any bearing on the Court's conclusions that plaintiff's claims are barred by sovereign immunity, res judicata, and failure to exhaust. Plaintiff also avers that the Court's ruling "suffers from significant deficiencies" that warrant reconsideration. ECF 47 at 11. I address plaintiff's arguments, seriatim.

First, plaintiff reiterates his complaint that the VA failed to serve him with a copy of its reply, thereby denying him the "basic and inalienable legal right of defending himself." *Id.* at 3. However, as explained above, assuming the truth of these allegations, the VA's failure to provide plaintiff with a copy of its reply triggers no due process concerns because plaintiff was not entitled to file a surreply as a matter of course.

Further, plaintiff quarrels with the date of his termination, asserting that he was fired in January 2016 when his supervisor directed him to leave UM, not on March 18, 2016, as set forth in a letter that he received from UM on February 4, 2016. ECF 47 at 5. But, the precise date of plaintiff's termination is of no import. As discussed above, Maryland has waived its sovereign immunity as to breach of contract claims filed within one year of the alleged breach. *See* ECF 42 at 20. Dr. Panghat waited until January 18, 2019, to file his suit. Thus, whether plaintiff was fired in January or March of 2016 is a distinction without a difference; either way, his claim is barred by sovereign immunity.

Next, plaintiff asserts that the Court erred in dismissing his constitutional due process claim. According to plaintiff, his termination violated due process because it occurred "without the mandatory 'Written Notice,'" *id.* at 5, or a "finding that found Plaintiff guilty of Sexual Harassment." *Id.* at 6. These contentions are specious. As an initial matter, the Court did not reach the merits of plaintiff's constitutional claim. Rather, the Court determined that plaintiff's suit against UM was barred by res judicata, and that his failure to exhaust his administrative remedies required the dismissal of his due process claim as to the VA. ECF 42 at 25, 33-35.

In any event, plaintiff's due process claim fails on the merits. The Due Process Clause of the Fourteenth Amendment forbids the government from depriving a person of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "'The root requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (emphasis in original) (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)). "This principle requires 'some kind of a hearing' prior to the discharge of an employee who has a

constitutionally protected property interest in his employment." *Loudermill*, 470 U.S. at 542 (citation omitted); *see Bd. of Regents v. Roth*, 408 U.S. 564, 576-77 (1972).

Courts assess due process claims in two steps. "The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999). If so, then the court evaluates whether the State's procedures comport with due process. *Id.* At step one, a "government employee 'has a protected property interest in continued public employment only if he can show a legitimate claim of entitlement to his job under state or local law.'" *Andrew v. Clark*, 561 F.3d 261, 269 (4th Cir. 2009) (quoting *Luy v. Balt. Police Dep't*, 326 F. Supp. 2d 682, 689 (D. Md. 2004)). Consequently, "[a] public employee in an at-will position cannot establish such an entitlement, and thus cannot claim any Fourteenth Amendment due process protection." *Andrew*, 561 F.3d at 269 (quoting *Luy*, 326 F. Supp. 2d at 689-90). That said, an at-will public employee can allege an entitlement to termination "for cause" if he can show the existence of "rules and understandings, promulgated and fostered by state officials" promoting such a procedure. *Perry v. Sindermann*, 408 U.S. 593, 602 (1972).

In this case, Dr. Panghat's offer letter from UM provided that his appointment as a Visiting Post-Doctoral Fellow would start "on or around September 21, 2015" and that "the initial term of appointment is expected to be for one year." ECF 5-4 ("Offer Letter") at 1. However, the letter qualified that plaintiff's appointment could end via "notice of termination per the UMSOM Scholar Fellow Policy." *Id.* Under the terms of the Scholar Fellow Policy, "[a] Scholar Fellow appointment may be terminated by the Unit Head (Dean, Chair, Director), *with or without cause*, before expiration for disciplinary or non-disciplinary reasons[.]" ECF 5-6 ("Fellow Policy") (emphasis added). The Fellow Policy further provided that fellows "are to be provided with a

16

minimum of 60 calendar days' written notice when an appointment is to be terminated." *Id.* However, it also explained that "[e]xceptions to providing the requisite 60 day notice may be sought through the [School of Medicine] Dean's Office in extraordinary circumstances[.]" *Id.*

The terms of the Fellow Policy make clear that plaintiff could be fired *without* cause. In other words, Dr. Panghat was an at-will employee. Under Maryland law, such an employee can be terminated for any reason, so long as the discharge does not contravene a clear mandate of public policy. *See, e.g.*, *Molesworth v. Brandon*, 341 Md. 621, 629, 672 A.2d 608, 612 (1996); *Adler v. Am. Standard Corp.*, 291 Md. 31, 432 A.2d 464 (1981). And, the Complaint does not allege with any specificity that UM or the VA had implemented rules or policies concerning retention and termination that would lead plaintiff reasonably to believe that he could only be terminated for cause. Thus, plaintiff's termination does not offend constitutional due process. S*ee, e.g.*, *Cominelli v. The Rector & Visitors of the Univ. of Va.*, 589 F. Supp. 2d 706, 712-13 (W.D. Va. 2008) (plaintiff lacked a property interest in his position as Chief of Medicine at UVA Hospital because he was an at-will employee), *aff'd*, 362 F. App'x 359 (4th Cir. 2010).

Plaintiff also contends that the Court erred in rejecting his due process claim because defendants violated the *Accardi* doctrine. *See* ECF 47 at 6 (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954)). The *Accardi* case stands for the proposition that "when an agency fails to follow its own procedures or regulations, that agency's actions are generally invalid." *Nader v. Blair*, 549 F.3d 953, 962 (4th Cir. 2008). Maryland courts apply a similar doctrine to State agencies. *See Pollock v. Patuxent Inst. Bd. of Review*, 374 Md. 463, 823 A.2d 626, 639-45 (2003). But, the Complaint does not identify with any specificity what policies or regulations promulgated by UM or the VA were violated by plaintiff's termination. Moreover, even if UM, plaintiff's employer, did violate its internal policies, the Fourth Circuit has recognized

that the "mere fact that a state agency violates its own procedures does not, *ipso facto*, mean that it has contravened federal due process requirements." *Morris v. City of Danville*, 744 F.2d 1041, 1048 n.9 (4th Cir. 1984); *accord Palotia v. Univ. of Md. at Coll. Park*, 38 F. App'x 946, 953 (4th Cir. 2002).

Finally, plaintiff argues that the Court disregarded evidence of plaintiff's "innocence," in violation of the Federal Rules of Evidence; overlooked violations of regulations promulgated by the United States Department of State; and has ignored plaintiff's claims that he was discriminated against on the basis of his national origin and race. ECF 47 at 7-10. These assertions are merely rehashed arguments that plaintiff raised in opposing defendants' motions to dismiss. And, they are no less frivolous this time around.

In sum, plaintiff has done nothing more than ask the Court to change its mind. Because such a request falls outside the ambit of Rule 59(e), I shall deny plaintiff's Motion to Reconsider.

### III.    Conclusion

For the foregoing reasons, I shall deny the Motion for Recusal. ECF 52. And, I shall also deny plaintiff's Motion to Reconsider. ECF 47.

An Order follows.


Date: March 27, 2020                                  _____/s/_____
                                                      Ellen L. Hollander
                                                      United States District Judge